COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Judges Beales, O'Brien and Malveaux
Argued by videoconference


KONSTANTIN SIZOV

MEMORANDUM OPINION* BY
v.       Record No. 1704-19-4                    JUDGE RANDOLPH A. BEALES
                                                 DECEMBER 8, 2020
NATALIA V. SIZOV


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

Dusty Sparrow Reed (Konstantin Sizov, *pro se*, on briefs), for
appellant.

Natalia V. Sizov, *pro se*.


In this case, Konstantin Sizov ("father") appeals an order of the Circuit Court of the City

of Alexandria granting Natalia V. Sizov ("mother") a divorce and resolving matters related to the

dissolution of the marriage. Father presents seventeen assignments of error for our

consideration. He contends that the trial court erred in granting a divorce based on adultery, in

awarding sole legal custody of the parties' minor son to mother, in awarding shared physical

custody between the parties, in ordering father to pay child support and spousal support to

mother, in distributing the property of the marriage, and in awarding attorney's fees to mother.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother raises two cross-assignments of error, challenging the amount of the trial court's award of attorney's fees and the trial court's distribution of the marital property.[1]

## I. BACKGROUND

### A. Divorce Decree and Child Custody

On appeal, we view the evidence in the light most favorable to mother, as the party that prevailed in the trial court, and we grant to mother all reasonable inferences fairly deducible therefrom. Mayer v. Corso-Mayer, 62 Va. App. 713, 717 (2014). So viewed, the parties had three children during the marriage. One of the children, A.S.,[2] is currently a teenager and an unemancipated minor.

During the marriage, father developed an intimate relationship with a woman named Gargi Varma. On June 28, 2017, during an evening dinner conversation between mother, father, and A.S., father revealed the adulterous nature of his relationship with Gargi to mother. At that time, mother realized that A.S. – who was only twelve years old at the time and yet expressed no surprise at his father's revelation – was already aware of his father's adulterous relationship.

Mother filed her complaint for divorce on July 17, 2017. Father counterclaimed for divorce and asserted that mother condoned the adultery about which she complained. Mother adamantly denied that she ever condoned the adulterous relationship. The trial court found that the parties separated on November 20, 2017. They entered into a *pendente lite* agreement on the

---

[1] Mother also filed a motion to dismiss the appeal. Because the Court has jurisdiction to decide this matter and so decides it today, we decline to dismiss the appeal and will proceed to consider father's assignments of error and mother's cross-assignments of error. Oral argument in this case occurred on October 28, 2020. On November 16, 2020, mother filed a motion to expedite consideration of this appeal. Given that the Court this day issues its opinion, we do not need to reach that motion other than to note that we have resolved the seventeen assignments of error and two cross-assignments of error as quickly as possible – and within a few weeks of oral argument in this case to the Court.

[2] We use the child's initials in order to better protect his privacy.

same day that provided for joint legal custody and shared physical custody of A.S., and also provided that the parties would share equally the costs of childcare. The court retained Dr. William Zuckerman to conduct an evaluation of the Sizov family and to present the court with custody recommendations regarding A.S. In relevant part, Dr. Zuckerman recommended that the parties share joint legal custody of A.S and recommended a shared physical custody arrangement "that gives [A.S.] slightly more time with his father than his mother."

Following a six-day bench trial, the trial court announced the ruling of the court from the bench on April 19, 2019. The court found that there was clear and convincing evidence that father had an adulterous relationship and granted mother's request for a divorce based on adultery. The court further found "that the defense that [mother] condoned the relationship is unfounded and not supported by the evidence at trial." On the issue of custody, the court decided to award sole legal custody to mother, because the court did "not believe that the parents can cooperate sufficiently to resolve legal issues which may arise relating to [A.S.]." The court awarded the parties shared physical custody of the child – with slightly more time with the child to mother.

### B. Child Support and Spousal Support

After making its custody determination, the court initially ordered father to pay monthly child support of $500. The court was "persuaded that the difference in the parties' incomes supports a finding that Wife is entitled to child support in the amount of $500 per month" as of the date of entry of the *pendente lite* award. The court also ordered payment of retroactive child support in the amount of $100 per month – in addition to the $500 monthly child support award – in order to satisfy $10,500 in child support arrears that father had accrued since the entry of the *pendente lite* award. Next, the court awarded spousal support to mother in the amount of $600 per month for five years from the date of the final order.

## C.  Equitable Distribution

Father's primary source of income is Drive Square, Inc. ("Drive Square"), a business he co-founded during the marriage.  Father is the majority owner, holding 720 of the company's 1000 outstanding shares.  Two minority shareholders own the remaining 280 shares.

The parties disputed the value of Drive Square for equitable distribution purposes.  The court heard from dueling experts who testified to two different valuations.  Mother offered Thomas Nye, a forensic accountant for the Department of Defense, as a business valuation expert.  Before allowing him to testify, the trial court probed Nye's qualifications.  Nye indicated that he had received training in business valuation, but admitted that he had not obtained certain professional designations in business valuation and had never previously testified as an expert as to business valuation in any court.  Following this testimony, father's counsel moved to disqualify Nye as an expert.  When asked if he had ever performed a business valuation, Nye replied, "I've done portions of it as a group for the larger businesses, this is a very small business," and explained that Drive Square would be "the third, maybe fourth [business] I've valuated."  The trial judge allowed Nye to testify as an expert witness.

Nye then testified that Drive Square is worth $754,000 in total.  He testified that he reached a valuation of $754,000 based on a "reconciliation of an income and market approach." Father then offered Joseph Estabrook, who testified that, using an asset-based approach, father's 72% share of the business is worth $135,000.  The court underscored the substantial difference between the valuations reached by the two expert witnesses and found itself unable to fully adopt the value assigned by either expert.  Accordingly, the trial court assigned a value of $400,000 to Drive Square and awarded mother 35% of father's 72% interest in the business.

Following the oral ruling of the court, it conducted a hearing on the entry of the final order on August 14, 2019.  At that hearing, father's counsel requested that mother accept a

- 4 -

transfer of stock ownership equating to her share of the marital share of Drive Square. Mother's counsel declined and explained that the court gave the parties the option to pursue a stock transfer, but that mother did not elect to do so, and that she instead requested a monetary award of her portion of the marital share. The court found in favor of mother and awarded her $100,800, equal to 35% of father's 72% stake in the company.

The court also heard testimony regarding a Citibank credit card and approximately $20,000 of debt accrued on it. The court initially allocated the Citibank credit card debt as a joint marital debt, but mother's counsel argued that this debt should have been classified as father's personal, separate debt. Mother argued that she had no access to the Citibank account, that father failed to produce a bank statement indicating how much, if any, of the debt went toward a roof repair on the marital home, and that father used the Citibank card as a credit card for his business, Drive Square. When asked if she ever had a credit card from Citibank or ever used the account in question, mother answered "No" to both questions. Consequently, the trial court decided to "adjust this finding and find that [the Citibank debt] is not a marital debt and it will be [father]'s sole debt."

### D. Attorney's Fees

Finally, the trial court awarded mother $20,000 in attorney's fees and declined father's request for attorney's fees. The trial court entered its final order on August 23, 2019. Mother filed a motion to reconsider the award of attorney's fees to her as being too low an amount. Father filed a cross-motion opposing mother's request and asking the court to reconsider its denial of father's request for attorney's fees. The court denied all motions and cross-motions for reconsideration. This appeal followed.

## II. ANALYSIS

### A. DIVORCE DECREE

The trial court granted mother's request for a divorce on the ground of adultery. In his first assignment of error, father contends that the trial court "erred by granting a divorce to the Plaintiff on the grounds of adultery where such claim was neither plead with the requisite specificity required by Rule 1:4(d), nor corroborated by the Plaintiff, and Plaintiff condoned the extramarital relationship."

#### 1. Sufficiency of the Complaint

As an initial matter, we cannot consider father's argument that mother failed to plead her complaint with the requisite specificity because father never filed a demurrer in the trial court. Instead, his answer to mother's complaint simply stated, "Plaintiff has not properly pled a claim for adultery as she has not indicated a place or location or time. Her claim of adultery is legally insufficient and fails to state a cause of action, and therefore is demurrable."

Rule 3:18(e) of the Supreme Court of Virginia states, "Answers, counterclaims, cross-claims, pleas, demurrers, affirmative defenses and motions may all be included in the same filing *if they are separately identified in both the caption and the body of the filing*." (Emphasis added). Father failed to comply with the rules of court if he attempted to file a demurrer within his answer as this filing with the trial court never even states in the caption that it includes a demurrer. Because father did not file a demurrer to mother's complaint or obtain a ruling on his statement that the complaint was "demurrable," Rule 5A:18 precludes father from arguing on appeal that mother's complaint failed to state a cause of action. Therefore, we cannot consider the portion of Assignment of Error 1 that attacks the adequacy of mother's pleadings.

## 2. Sufficiency of Corroborating Evidence

As for the sufficiency of the corroborating evidence of adultery, we begin with the firmly rooted principle of appellate review that "a factual determination cannot be reversed on appeal unless 'plainly wrong or without evidence to support it.'" Congdon v. Congdon, 40 Va. App. 255, 261 (2003) (quoting Code § 8.01-680). As in the case before us, "[w]hen a trial court hears evidence at an *ore tenus* hearing, its factual findings are entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support them." D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335 (2005). Moreover, it is clear that "[t]he question of corroboration is one of fact." Pommerenke v. Pommerenke, 7 Va. App. 241, 245 (1988) (quoting Martin v. Martin, 202 Va. 769, 774 (1961)).

Code § 20-99(1) states, "No divorce, annulment, or affirmation of a marriage shall be granted on the uncorroborated testimony of the parties or either of them." As we have explained, "The purpose of requiring corroboration is to prevent collusion by the parties in obtaining a divorce." Venable v. Venable, 2 Va. App. 178, 184 (1986). Thus, "[w]here it is apparent that there is no collusion, the corroboration needs to be only slight." Pommerenke, 7 Va. App. at 245 (quoting Collier v. Collier, 2 Va. App. 125, 128 (1986)).

The record below reveals ample corroborating evidence of adultery. First, Dr. Zuckerman's report and testimony corroborated mother's allegation, as he reported that father was adulterously involved with Gargi. When asked on the stand about the veracity of Dr. Zuckerman's conclusion that father and Gargi "met in 2012 and the relationship turned intimate fairly quickly," father responded, "I don't dispute Dr. Zuckerman's report." The court also heard testimony from Gargi's ex-husband, which corroborated mother's allegation. He testified in 2015, during divorce proceedings between him and Gargi, that Gargi had committed adultery with Konstantin Sizov. Finally, the trial court found "that Ms. Varma on multiple

occasions spent these occasions with Mr. Sizov, who at times would remain away from the marital home for as many as 90 days." The court found the evidence "clear and convincing that Mr. Sizov was involved in an adulterous relationship," and granted mother's request for a divorce on the ground of adultery. Based on all of this evidence, we certainly cannot say that the trial court was plainly wrong, and we disagree with father's contention that there was insufficient corroborating evidence of adultery. Therefore, we hold that the trial court did not err in granting mother a divorce on the ground of adultery under Code § 20-91(A)(1).

### 3. Father's Defense of Condonation

Next, we find no error in the trial court's rejection of father's claim that mother condoned the adulterous relationship. "Condonation" in the context of adultery refers to "one spouse's forgiveness of the other spouse's adulterous misconduct, usually evidenced by resumption and continuation of apparently normal matrimonial relations." Hollis v. Hollis, 16 Va. App. 74, 77 (1993). "The essential elements of condonation are freedom of consent, knowledge of the offense and restoration of the marital rights." Elder v. Elder, 139 Va. 19, 27 (1924). Because knowledge of the offense is an essential element, condonation "may only occur *after* the occurrence of the misconduct." Hollis, 16 Va. App. at 77 (emphasis added).

Father argues that mother condoned his adulterous relationship with Gargi. Specifically, he points to text messages from November 2016 and January 2017 that he claims show mother's "total indifference to [father]'s message that he will be staying with their daughter . . . at Gargi's place in Richmond." However, father does not argue on brief to this Court that mother condoned the relationship after June 2017, when mother allegedly learned of the adulterous nature of that relationship. In fact, mother filed for divorce on July 17, 2017, just three weeks after she claims that father revealed his adultery. The trial court found "that the defense that [mother] condoned the relationship is unfounded and not supported by the evidence at trial." In this case, we cannot

- 8 -

say that the trial court was plainly wrong in concluding that father failed to carry his burden of proving that mother condoned the adultery.  Therefore, the trial court did not err in rejecting father's condonation defense.

B.  CHILD CUSTODY

In Assignments of Error 2, 3, and 14, father challenges the trial court's child custody decision.  Assignment of Error 2 alleges that the trial court erred in awarding sole legal custody to mother and in awarding shared physical custody "in disregard for the findings and recommendation of the custody evaluator mutually selected by the parties."  Assignment of Error 3 alleges that the child custody order was in error "where the Trial Court's stated finding regarding the child's preference . . . is in plain error and contrary to the evidence."  Finally, Assignment of Error 14 alleges that the trial court erred "in denying Defendant's Motion to Reconsider the Custody Award and granting the Defendant a hearing on the merits, despite that the Court noted there had been a change in circumstance after the trial concluded and before the Final Order was entered."

1.  Custody Order – Assignments of Error 2 & 3

In child custody cases, Code § 20-124.2 provides that "the court shall give primary consideration to the best interests of the child."  Code § 20-124.3, in turn, lists ten factors that the court "shall consider" in determining a child's best interests.  "[T]rial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328 (1990).  In reviewing a child custody decision, therefore, "we presume the trial court thoroughly weighed all the evidence and decreed custody as it believed would be to the best interest of the child."  Sutherland v. Sutherland, 14 Va. App. 42, 44 (1992).  "Although the trial court must examine all factors set out in Code § 20-124.3, 'it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the

statutory factors.'"  Brown v. Brown, 30 Va. App. 532, 538 (1999) (quoting Sargent v. Sargent, 20 Va. App. 694, 702 (1995)).  "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal."  Id.

At the conclusion of trial, the trial judge read the ruling of the court and pronounced the court's findings on the statutory factors under Code § 20-124.3.  The judge noted the evidence showing that "[A.S.]'s relationship with his mother is damaged," underscoring the "fractured relationship between [mother] and [A.S.], mostly caused by his father's adulterous relationship with Ms. Varma."  Specifically, the trial court found that this damage was due in large part to the fact that A.S. was aware of his father's relationship with Gargi and knew that he could not tell his mother.  The judge emphasized that this created a "loyalty bond with his father and Ms. Varma which prevented him from revealing their relationship with one another," and further found that Gargi "at times has attempted to stand in place of and in stead of" mother, "choos[ing] to act" as A.S.'s "substitute mother."  In addition, at the time of the trial court's April 2019 ruling, the trial judge noted mother's repeated allegations that father was effectively withholding custody of A.S. from mother.  Regarding the child's preference, the trial court found that A.S. preferred "to remain in the marital home but to have as much contact with his father as reasonably possible."  Dr. Zuckerman testified that A.S. had been coached by his father about testifying.  In Dr. Zuckerman's expert opinion, A.S. "had become a confederate in alliance with his father, undermining the relationship with the mom," which "tear[s] at the relationship between mom and the boy."  Accordingly, the trial judge found that A.S. could "express his desire to live with one or the other, but he doesn't have the final say, and that should be made clear to him by both parents."

Based on this evidence, the trial court decided to award shared physical custody of A.S., giving slightly more time to mother.  The court further concluded that the parties "have not

demonstrated an ability to resolve matters in a peaceful manner," that they could not "cooperate sufficiently to resolve legal issues which may arise relating to [A.S.]," and that, therefore, it would award sole legal custody to mother.

We find no merit in father's argument that the trial court's child custody order amounted to an abuse of discretion. With respect to the argument that the trial court ignored Dr. Zuckerman's recommendation for joint legal custody, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Layman v. Layman, 62 Va. App. 134, 137 (2013) (quoting Street v. Street, 25 Va. App. 380, 387 (1997) (*en banc*)). "[T]he fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert." Street, 25 Va. App. at 387. Thus, the trial judge had no obligation to accept Dr. Zuckerman's recommendations. The court determined that joint legal custody would be impractical in light of the parties' inability to resolve disputes and work together in a way that they could cooperate sufficiently to resolve legal issues relating to A.S. and, therefore, decided that awarding sole legal custody to mother would serve A.S.'s best interests. The trial court acted well within its broad discretion in doing so.

Moreover, viewing the evidence in the light most favorable to mother, as we must because mother prevailed on these issues at trial, we certainly cannot say that the trial court's findings of fact on the statutory factors were plainly wrong or without evidence to support them. There was credible evidence to support the trial judge's conclusion that father was undermining the child's relationship with mother, and the court was permitted to rely on this evidence in fashioning the custody arrangement. Dr. Zuckerman testified that father "had behaved in a way that had undermined the child's relationship with the mom," that father "contributed to tensions between the boy and the mom" by "introduc[ing] Ms. Varma as an alternative maternal figure,

- 11 -

which undermined the relationship of the boy with the mom," and that father "had done this over a many-year period, where the children knew about Ms. Varma but Ms. Sizov did not." Dr. Zuckerman further opined that "mother did not undermine the relationship with the father in that same way." The court's analysis of A.S.'s preference was also supported by credible evidence. When asked whether A.S. had the capacity to express such a preference, Dr. Zuckerman replied, "I don't think [A.S.] appreciated the degree to which these events undermined his relationship" with his mother, and "I don't think [A.S.] quite understood how his relationship with his mother came to such a bad place." The court also heard evidence that A.S. was coached by his father about testifying.

The trial court did *not* explain exactly what weight it gave to *each* of the statutory factors – which, as we have noted, is not necessary to fulfilling the trial court's statutory obligations – but in light of the foregoing, we hold that the trial court's findings of fact on the statutory factors under Code § 20-124.3 were supported by credible evidence. Because the court's factual findings were not plainly wrong or unsupported by any credible evidence in the record, we cannot say that the trial court abused its discretion by relying on those findings of fact in awarding sole legal custody to mother and shared physical custody between the parties. Consequently, we affirm the decision of the trial court with respect to Assignments of Error 2 and 3.

## 2. Denial of Father's Motion to Reconsider – Assignment of Error 14

In his fourteenth assignment of error, father asserts that the trial court erred in denying his motion to reconsider the custody award and declining to afford him a hearing on the motion. Specifically, he argues that the trial court "abused its discretion by not granting the Father a hearing based on the material change of circumstances stemming from [A.S.] walking out of the Mother's home and refusing to live there," an incident that occurred on March 11, 2019.

Once a trial court renders a child custody decision, Code § 20-108 allows the court to "revise and alter such decree concerning the care, custody, and maintenance of the children . . . as the circumstances of the parents and the benefit of the children may require." "In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether a change of circumstances has occurred since the most recent custody award; and (2) whether such a change would be in the best interests of the child." Khalid-Schieber v. Hussain, 70 Va. App. 219, 228 (2019) (quoting Parish v. Spaulding, 26 Va. App. 566, 570-71 (1998)). As our Supreme Court has explained, "The second prong of the test is in accord with the countless cases in which we have stated that the best interests of the children are paramount," and is therefore "clearly the most important part of the two-part test." Keel v. Keel, 225 Va. 606, 612 (1983). Accordingly, "[t]he circuit court has broad discretion in making the decisions necessary to guard and to foster a child's best interests," Wynnycky v. Kozel, 71 Va. App. 177, 193 (2019) (quoting Eaton v. Dep't of Soc. Servs., 66 Va. App. 317, 324 (2016)), and its decision "is reversible only upon a showing that the court abused its discretion," id. (quoting Bedell v. Price, 70 Va. App. 497, 504 (2019)).

Based on the record before us, we cannot say that the trial court abused its discretion in denying father's motion to reconsider the custody arrangement. When the trial judge read his ruling from the bench in April 2019, he noted that A.S.'s behavior "seems to conflict with his statements to Dr. Zuckerman," "[s]o obviously there's been some change in circumstances." However, after considering this information, the trial judge stated that "the Court's ruling will stand until any further information is provided to the Court." When father filed the motion to reconsider in September 2019, he referred to the same March 11, 2019 incident as a material change of circumstances. Therefore, father provided no additional evidence of changed circumstances justifying a custody modification other than what the trial judge knew and

considered in April when he then ruled on the issue of child custody. However, even assuming without deciding that A.S.'s refusal to go to or stay at mother's home amounted to a material change of circumstances, the trial court acted well within its discretion in implicitly determining that modification of the custody arrangement would not have served the best interests of the child. As noted *supra*, the court found that father was undermining A.S.'s relationship with his mother and noted mother's allegations that father was effectively withholding the child from mother's custody. After trial had concluded, father filed several motions to reconsider the custody award. The trial court could have certainly concluded that granting father's repeated motions for modification of the custody decision would not have served A.S.'s best interests, and we cannot say that the trial court abused its discretion in determining that a custody modification was not warranted. Indeed, the record supports the trial court's decision. Consequently, we hold that the trial court did not err in denying father's motion to reconsider the custody award.

## C. SPOUSAL SUPPORT

Father also makes three assignments of error to the trial court's spousal support award. In Assignment of Error 4, he contends that the court erred in ordering him to pay $600 per month for five years without identifying the factors in Code § 20-107.1(E) that supported the award and without making written findings in accordance with Code § 20-107.1(F). He argues in Assignment of Error 5 that the trial court erred by failing to state whether the retirement of either party was contemplated by the court in making the award.[3] Next, in Assignment of Error 6, he

---

[3] In support of Assignment of Error 5, father presents no argument on brief. Under the heading "Assignments of Error," father lists seventeen errors, including that the trial court erred in failing to state whether it contemplated the parties' retirement age in making the spousal support award. However, this assignment of error appears nowhere in the "Argument" section of father's brief, which contains only sixteen assignments of error.

Rule 5A:20(e) requires an appellant's opening brief to contain "the argument (including principles of law and authorities) relating to each assignment of error." "[W]hen a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented as waived.'" Parks v. Parks, 52 Va. App. 663, 664

argues that the trial court erred by failing to state the basis for the nature, amount, and duration of the award – as well as the events and circumstances reasonably contemplated by the court that support the award.

Code § 20-107.1(E) provides that "[t]he court, in determining whether to award support and maintenance for a spouse, shall consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including adultery and any other ground for divorce." It goes on to list thirteen factors that the court "shall consider" when "determining the nature, amount and duration of an award pursuant to this section." Code § 20-107.1(F) provides:

> In contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E which support the court's order. Any order granting or reserving any request for spousal support shall state whether the retirement of either party was contemplated by the court and specifically considered by the court in making its award, and, if so, the order shall state the facts the court contemplated and specifically considered as to the retirement of the party. If the court awards periodic support for a defined duration, such findings shall identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the court which support the award.

Neither party disputes that this was a contested case triggering the application of subsection (F) of Code § 20-107.1. Moreover, because the court awarded spousal support for a five-year period, this was the "particular kind of spousal support award" that required the court to "go further and 'identify the basis for the nature, amount and duration of the award and, if appropriate, a specification of the events and circumstances reasonably contemplated by the

---

(2008) (quoting Jay v. Commonwealth, 275 Va. 510, 520 (2008)). "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Atkins v. Commonwealth, 57 Va. App. 2, 20 (2010) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56 (1992)). Given father's failure to present this Court with any argument in support of Assignment of Error 5, the Court does not reach that assignment of error as father has waived it.

court which support the award.'" Pilati v. Pilati, 59 Va. App. 176, 182 n.1 (2011) (quoting Code § 20-107.1(F)).

In this case, the circuit court's final order fails to specify any of the statutory factors relied upon by the circuit court in making the spousal support determination and fails to state the basis for the nature, amount, and duration of the award. Moreover, while the circuit court could have satisfied the requirements of Code § 20-107.1(E) and Code § 20-107.1(F) in several ways not limited to the text of the court's final order, see, e.g., id. at 182, the transcript of the circuit court's ruling from the bench sheds no additional light on either the factors the circuit court relied upon in making the spousal support award or the basis for the nature, amount, and duration of that award. Consequently, we hold that the circuit court failed to comply with the statutory requirements of Code § 20-107.1(E) and Code § 20-107.1(F) and that its "failure to do so constitutes reversible error." Robinson v. Robinson, 50 Va. App. 189, 194 (2007).

We do not opine as to whether the circuit court's decision to award a monthly spousal support amount of $600 for a period of five years is correct. Because the circuit court failed to satisfy its statutory obligation to explain the spousal support award, we are unable to evaluate the correctness of the circuit court's decision. Therefore, "we 'remand this matter to the trial court with instructions to provide an explanation in compliance with the statute.'" Pilati, 59 Va. App. at 184 (quoting Kane v. Szymczak, 41 Va. App. 365, 376 (2003)).

D.  CHILD SUPPORT

Father next argues in Assignments of Error 7 and 8 that the trial court erred when it "failed to calculate the presumptive amount of child support owed under the guidelines" and "failed to make written findings to state what the amount of child support would have been pursuant to the guidelines, and failed to explain in accordance with the factors why the order varies from the guidelines."

Code § 20-108.1(B) states that "there shall be a rebuttable presumption . . . that the amount of the award that would result from the application of the guidelines set out in § 20-108.2 is the correct amount of child support to be awarded."

> In order to rebut the presumption, the court shall make written findings in the order, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case. The finding that rebuts the guidelines shall state the amount of support that would have been required under the guidelines, [and] shall give a justification of why the order varies from the guidelines . . . .

Id. Code § 20-108.2 then sets out the child support guidelines and governs how the presumptive child support amount is to be calculated. Here, father did not argue before the trial court that the court failed to comply with the requirements of Code §§ 20-108.1 and 20-108.2. However, he contends that we should consider this argument on appeal under the ends-of-justice exception to Rule 5A:18 based on this Court's decision in Herring v. Herring, 33 Va. App. 281 (2000).

> In Herring, we held that "when determining child support, a court has an affirmative duty to calculate expressly the presumptive amount of child support under the guidelines and, if it deviates from that presumptive amount, to explain adequately the basis for such deviation" because these actions are necessary "to ensure that the award meets . . . the best interests of the child."

Anonymous B v. Anonymous C, 51 Va. App. 657, 676 (2008) (quoting Herring, 33 Va. App. at 287-88). Furthermore, "due to the importance of these duties to the goal of meeting the best interests of the child," this Court held that a parent's failure to preserve this objection "does not prevent us from reviewing [this issue] on appeal." Id. (citing Herring, 33 Va. App. at 287-88). Consequently, given this Court's decision in Herring, father's lack of a contemporaneous objection does not preclude us from considering these arguments on appeal.

In this case, the circuit court initially ordered father to pay monthly child support of $500. In the final order, the circuit court explained, "Based on the parties' testimony regarding their respective financial circumstances and after consideration of all of the statutory factors mandated

- 17 -

by the Code of Virginia, the Court finds it appropriate to deviate from the Child Support Guidelines." In support of that decision, the circuit court was "persuaded that the difference in the parties' incomes supports a finding that Wife is entitled to child support in the amount of $500 per month" as of the date of the *pendente lite* agreement. The court further ordered the payment of retroactive child support in the amount of $100 per month – in addition to the $500 monthly child support award – in order to satisfy $10,500 of child support arrears that father had accrued and owed to mother since the entry of the *pendente lite* award. The circuit court's actions were inadequate to satisfy Code §§ 20-108.1 and 20-108.2.

"The starting point in any award of child support is the presumptive calculations" set out in the applicable statutes. Niblett v. Niblett, 65 Va. App. 616, 625 (2015). Code § 20-108.1 makes clear that there "shall be a rebuttable presumption" that the amount that would result from applying the child support guidelines in Code § 20-108.2 is correct. Furthermore, in order to rebut that presumption, Code § 20-108.1 states that the circuit court "shall make written findings in the order . . . that the application of such guidelines would be unjust or inappropriate in a particular case," which findings "shall state the amount of support that would have been required under the guidelines." Code § 20-108.1. Here, the record from the circuit court reveals no calculation of the presumptive amount of child support under the guidelines, nor is there any statement of why the application of the child support guidelines would be unjust or inappropriate. Thus, we hold that the circuit court's order on child support fails to comply with the statutory requirements and the "mandatory steps that courts must follow" in exercising their discretion to make an award of child support. See, e.g., Ridenour v. Ridenour, 72 Va. App. 446, 452 (2020).

"Because in determining child support under Code § 20-108.2(C), the trial court must include spousal support in the gross income of the receiving spouse and must deduct the amount

of spousal support from the gross income of the paying spouse," the circuit court on remand is directed to first address spousal support in accordance with this opinion – and then address the matter of child support. Frazer v. Frazer, 23 Va. App. 358, 381 (1996). The circuit court must then calculate the presumptive amount of child support under the guidelines. If it finds that applying the guidelines would be unjust or inappropriate in this case, the circuit court must then follow the statutory directive of Code § 20-108.1 to make written findings explaining why it would be unjust or inappropriate to award the presumptive amount of child support and then justify any deviation therefrom.

In Assignment of Error 16, father challenges the circuit court's decision to order retroactive support of $100 per month to satisfy father's arrears under the *pendente lite* award. Because we reverse and remand on Assignments of Error 7 and 8, we do not now need to reach the question of whether the circuit court properly calculated father's arrears in ordering retroactive child support. If the circuit court "reaffirms its award on remand and provides a statutorily compliant explanation, the court has the discretion to address whether the award should be made retroactively." Pilati, 59 Va. App. at 185 n.4. There was considerable evidence before the circuit court that father was in arrears on child support payments ordered in the *pendente lite* award. Once the circuit court has established child support correctly, as dictated by the statutory requirements noted *supra*, the circuit court should also then assess whether father has accrued any child support arrears that would justify a retroactive imposition of additional monthly child support to satisfy any such arrears.

E. EQUITABLE DISTRIBUTION

We turn next to father's six assignments of error attacking the trial court's equitable distribution award. In Assignments of Error 9 and 10, father challenges the court's qualification of Thomas Nye as an expert witness and its consideration of Nye's testimony. In Assignment of

Error 11, father claims that the court failed to account for Drive Square's liabilities in the equitable distribution award. In Assignment of Error 12, he argues that the trial court erred in "double-dipping" into the value of Drive Square based on the court's "unsubstantiated belief the Defendant was earning unreported income from Drive Square." In Assignment of Error 13, father alleges that the court impermissibly "changed and overturned" its equitable distribution award without giving father an opportunity to argue against such changes. Finally, in Assignment of Error 15, father contends that the trial court incorrectly allocated the parties' Citibank credit card debt as father's sole debt after initially allocating the Citibank credit card debt as a joint marital debt.

Mother adds one cross-assignment of error on equitable distribution, in which she alleges that the trial court erred by limiting its award to 72% of the value of Drive Square.

### 1. Qualification of Thomas Nye – Assignment of Error 9

Father argues that the court's decision to qualify Nye as an expert in business valuation constituted an abuse of discretion given that Nye is a forensic accountant who had never previously testified in court as an expert in business valuation. He claims that mother hired Nye "to simply echo [her] wish that all the revenues of Drive Square, Inc. would be recognized by the Court as Father's personal income and intentionally inflate company value" and that Nye committed several errors that show he should not have been accepted by the trial court as an expert witness.

When mother offered Nye as an expert witness, the trial court probed his qualifications in the field of forensic accounting. Nye testified that he is "a certified public accountant," "a certified fraud examiner," and "a forensic certified public accountant" – also with three other professional designations. Nye stated that he holds a degree in fraud and forensic examination, and is "a member of the forensic evaluation services section of the AICPA," "a member of the

American Board of Forensic Accounting," and "a member of the National Association of Evaluation Analyst[s]." Nye also indicated that he had received training in business valuation. However, Nye admitted that he had not obtained certain professional designations in business valuation and had never previously testified as an expert in business valuation in any court. When asked if he had ever performed a business valuation, Nye replied, "I've done portions of it as a group for the larger businesses," and "[t]his will be the third, maybe fourth [business] I've valuated." Consequently, the trial judge qualified Nye as an expert, noting that "[w]e just have to have a greater insight as to the topic" and that the court would "give [Nye's] testimony the appropriate weight based on his testimony."

"'Whether a witness is qualified to testify as an expert is a matter within the sound discretion of the trial court,'" and we "appl[y] an 'abuse of discretion standard when reviewing a trial court's decision to admit expert opinion testimony.'" Online Res. Corp. v. Lawlor, 285 Va. 40, 59 (2013) (first quoting Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 111 (2000); then quoting CNH America LLC v. Smith, 281 Va. 60, 66 (2011)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Schmuhl v. Commonwealth, 69 Va. App. 281, 299 (2018) (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21 (2006)). Therefore, "[a] trial court's decision that a witness is qualified as an expert 'will not be disturbed on appeal unless the record clearly shows that the witness was not qualified.'" Wakeman v. Commonwealth, 69 Va. App. 528, 535 (2018) (quoting Spencer v. Commonwealth, 238 Va. 563, 573-74 (1989)), aff'd, 298 Va. 412 (2020).

Here, the trial court did not abuse its discretion in determining that Nye was qualified to render an opinion on the value of Drive Square. In light of Nye's credentials and his multiple professional certifications in accounting, as well as his testimony that he had received training in business valuation and that Drive Square was the "third, maybe fourth" business he had valued in

his career, the evidence in the record does not clearly show that Nye was unqualified to testify to the value of a business. Moreover, on the record before us, Nye's experience as a forensic accountant *was* in fact particularly relevant to the task of valuing Drive Square, given mother's repeated allegations that father used the business to perpetrate fraud and hide personal income. Nye's qualification as an expert signaled nothing more than that his testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue." Va. R. Evid. 2:702(a)(i). We cannot say that the trial court abused its discretion in determining that Nye's testimony would assist the court in determining how to value Drive Square for equitable distribution purposes. Therefore, we find no error in the trial court's decision to qualify Nye as an expert witness. Accordingly, we affirm the trial court's decision on Assignment of Error 9.

### 2. Valuation of Drive Square – Assignment of Error 10

Nye subsequently testified that the total value of Drive Square was $754,000. Father argues that the trial court erred in giving any weight to this testimony, which he claims was based on an erroneous standard of value. According to father, the trial court erred in "consider[ing] the fair market value business valuation presented by Mr. Nye instead of intrinsic value provided by Mr. Estabrook." He further argues that the trial court was plainly wrong in assigning a value of $400,000 to Drive Square because neither expert testified to a valuation of $400,000.

"A trial court has broad discretion to determine the value of assets." Hoebelheinrich v. Hoebelheinrich, 43 Va. App. 543, 556 (2004). "The burden is on the parties to provide the trial court sufficient evidence from which it can value their property." Bosserman v. Bosserman, 9 Va. App. 1, 5 (1989). "[T]he particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." Howell v. Howell, 31 Va. App. 332, 339 (2000). Because valuation is heavily

fact-dependent, "we give great weight to the findings of the trial court." Id. "We affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case." Id. "In sum, 'the value of property is an issue of fact, not law.'" Hoebelheinrich, 43 Va. App. at 557 (quoting Howell, 31 Va. App. at 340).

Furthermore, a trial court's resolution of conflicting expert testimony will only be reversed upon a showing of plain error. Shackelford v. Shackelford, 39 Va. App. 201, 208 (2002). The court may "choose among conflicting assessments of value as long as its finding is supported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 413 (1994); see also Zipf v. Zipf, 8 Va. App. 387, 395 (1989) (affirming a trial court's selection of value within a range of conflicting expert opinions).

Given the standard of review, we cannot say that the trial court was plainly wrong in giving weight to Nye's testimony. At trial, Nye testified that he reached a valuation of $754,000 based on a "reconciliation of an income and market approach." He testified at length to the methodology employed and his reasons for adopting this approach. Nye explained that he used this approach – as opposed to the asset-based approach used by Estabrook – because "there was no documentation for purchases made [that were] charged to cost of goods sold," and the assets of the business "could not be accurately determined." Because "the particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples," see Howell, 31 Va. App. at 339, we cannot say that the trial court was plainly wrong in finding that Nye's methodology and its application were appropriate for valuing Drive Square.

In addition, we cannot say that the trial court was plainly wrong in "assign[ing] a value of $400,000 to the entire company, of which Mr. Sizov owns 72%." The trial court was presented

- 23 -

with two very different values of the company's worth from the parties' experts. As the trier of fact, the trial court was permitted to "choose among conflicting assessments of value as long as its finding is supported by the evidence." McDavid, 19 Va. App. at 413. The trial court, after considering the testimony of the experts, found that Drive Square had a value of $400,000 – a value within the range presented by the two experts. Giving the trial court the deference required, we cannot say that it was plainly wrong in this finding of fact. Consequently, we affirm the trial court on Assignment of Error 10.

### 3. Distribution of Drive Square – Assignments of Error 11-13 & 15

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Wright v. Wright, 61 Va. App. 432, 449-50 (2013) (quoting Klein v. Klein, 11 Va. App. 155, 161 (1990)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Id. at 450 (quoting McDavid, 19 Va. App. at 407-08).

Father's assertion in Assignment of Error 11 – that the court failed to account for Drive Square's liabilities – is clearly disproven by the record. Both expert witnesses estimated Drive Square's liabilities, factored those liabilities into their respective valuations, and discussed those liabilities during trial. The trial court considered the company's debt in determining the company's value under Code § 20-107.3, and equitably distributed the value of the company between the parties. Accordingly, on Assignment of Error 11, we also affirm the decision of the trial court.

With respect to Assignment of Error 12, father never raised the argument that the court erred in "double-dipping" into the value of Drive Square. Rule 5A:18, in relevant part, provides,

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."  Father acknowledges that he failed to raise this argument in the trial court.  He advances no argument explaining why this Court should invoke the narrow ends-of-justice exception to consider this admittedly unpreserved argument.  Accordingly, Rule 5A:18 precludes us from reaching this argument that is made for the first time on appeal as a basis for reversing the trial court's equitable distribution award.

In Assignment of Error 13, father asserts that, by forcing him to pay the value of mother's portion of the marital share of Drive Square to mother rather than transferring ownership of stock equivalent to mother's portion of the marital share, the court impermissibly changed and overturned its ruling from the bench without giving father an opportunity to argue against such a change.  However, contrary to father's argument, the trial court did not "change[]" or "overturn[]" its earlier ruling.  At the August hearing on the final order, mother's counsel explained that the court "gave us the option" to pursue a stock transfer, but that mother did not elect to do so, and, consequently, mother requested a monetary award of her portion of the marital share of Drive Square.  The trial court agreed, noting that the plain language of its oral ruling from the bench permitted a stock transfer "[i]f the parties elect to approach" a stock transfer.  By awarding mother the value of 35% of the marital share of Drive Square instead of ordering the parties to pursue a stock ownership transfer, the trial court enforced – but did not change – its earlier ruling.  Consequently, on Assignment of Error 13, finding no error in the trial court's decision, we affirm the trial court.

Finally, on Assignment of Error 15, father attacks the trial court's decision to classify the Citibank credit card debt as father's separate debt after previously finding that the Citibank debt was a joint marital debt.  Father claims that much of the debt went toward financing a roof repair

on the marital home and that he used the Citibank card as "a rolling credit card which [he] used throughout the marriage, all the time." Therefore, he argues that "[t]he credit card debt incurred during the marriage should have been considered as a joint marital debt."

The trial court's decision to allocate the Citibank credit card debt to father was not plainly wrong or unsupported by the evidence. The court made a finding of fact that mother had no access to the Citibank card, and the evidence in the record supported this finding. Moreover, father failed to trace any amount of the Citibank debt to the roof repair on the marital home, presenting no evidence other than his testimony that the Citibank card was used to finance the roof repair. Because the trial court's relevant findings of fact are not plainly wrong, we cannot say that the trial court abused its discretion by allocating the Citibank credit card debt to father while the matter remained within the breast of the trial court. In light of the credible evidence supporting the trial court's decision to adjust this allocation of debt between the parties, we hold that the court committed no error in doing so, and we affirm its decision.

### 4. Mother's Cross-Assignment of Error on Equitable Distribution

In mother's Cross-Assignment of Error 2, she contends that the trial court erred by limiting its equitable distribution of Drive Square to father's "nominal ownership of 72 percent of the outstanding shares despite overwhelming evidence that [he] treated the company as if it were only his, and had never made any distributions to any other shareholders during the life of the company." Mother argues that "[n]either of the two individuals that hold 28 percent of the remaining stock are true stakeholders," because "[n]either has ever received any distributions," nor exercised any control over the company.

The trial court received evidence that Drive Square has two shareholders other than father. Specifically, father testified that Karen Angelini owns 240 shares out of a total of 1000 outstanding shares of stock, that Eric Helman owns 40 shares, and that father owns the remaining

- 26 -

720 shares.  Based on this evidence, we cannot say that the trial court was plainly wrong in determining that father owns 72% of Drive Square.  The trial court, therefore, did not abuse its discretion in limiting its equitable distribution award to 72% of the business rather than distributing the value of the entire company.  Thus, on mother's Cross-Assignment of Error 2, we affirm the ruling of the trial court.

## F.  ATTORNEY'S FEES

Both parties assign error to the trial court's award of attorney's fees.  In father's seventeenth and final assignment of error, he contends that the trial court improperly awarded attorney's fees to mother "without any findings or evidence to support such an award" after "refusing to receive evidence at trial regarding Defendant's settlement offers to Plaintiff."  In addition, father requests attorney's fees incurred in this appeal.  In mother's Cross-Assignment of Error 1, she claims that the trial court erred in its "extremely modest" award of attorney's fees, which covered only "about 10 percent of her total fees incurred."  Mother does not request any appellate attorney's fees.

"[A]n award of attorney's fees and costs is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case."  Jones v. Gates, 68 Va. App. 100, 105 (2017) (quoting Mayer, 62 Va. App. at 731).  "Such decision 'is reviewable on appeal only for an abuse of discretion.'"  Id. (quoting Graves v. Graves, 4 Va. App. 326, 333 (1987)).  "Our use of this deferential standard of review 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'"  Wynnycky, 71 Va. App. at 193 (quoting Hamad v. Hamad, 61 Va. App. 593, 607 (2013)).  Finding no clear error in the trial court's conclusion that all of the circumstances and equities of the case weighed in favor of a partial award of attorney's fees to mother, we cannot say that the trial court abused its discretion in awarding mother some but not all of her attorney's fees.  In short, neither party

has demonstrated that an award of $20,000 to mother was unreasonable under all of the circumstances and equities of the case, and, therefore, we cannot say that the trial court abused its discretion by declining to award mother all of her attorney's fees. Accordingly, we affirm the trial court on father's Assignment of Error 17 and mother's Cross-Assignment of Error 1.

This Court has discretion to grant or deny attorney's fees incurred on appeal. See Rule 5A:30(b); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). In making such a determination, the Court considers all the equities of the case. Rule 5A:30(b)(3). After considering the record before us and all the equities of the case, we deny father's request for appellate attorney's fees. Mother prevails on many of the issues presented by this appeal, father prevails on others, and the arguments presented on most of the assignments of error and cross-assignments of error are not frivolous. In exercising our discretion to decide whether to award appellate attorney's fees, we do not believe that the equities of this case justify such an award. Therefore, we deny father's request for appellate attorney's fees.

### III. CONCLUSION

In short, we find no error in the trial court's decision to grant mother a divorce on the ground of father's adultery. The court heard substantial corroborating evidence of mother's allegation of father's adultery aside from just the testimony of the parties. Furthermore, the court made a finding of fact that mother did not condone father's adulterous relationship – a finding supported by credible evidence in the record. Thus, we affirm the judgment of the trial court on Assignment of Error 1.

We likewise find no error in the trial court's child custody decision or its decision to deny father's motion to reconsider it. The trial court's factual findings on the statutory factors related to the best interests of the child were clearly not plainly wrong, as there was certainly credible evidence in the record to support the finding of fact that father was undermining the child's

relationship with mother and that father had coached the child about testifying in regard to his custodial preference. The court was under no obligation to accept the recommendations of the custody evaluator, and we cannot say that the trial court abused its discretion in determining that a custody modification was not warranted. Therefore, we affirm the judgment of the trial court as to child custody raised in father's Assignments of Error 2, 3, and 14.

Furthermore, the trial court did not err in qualifying Thomas Nye as an expert witness, did not err in its resolution of the competing expert valuations of Drive Square, did not err in its classification of father's share of Drive Square as marital and in its distribution to the parties of the marital share, and did not err in ordering father to comply with the terms of the court's ruling on equitable distribution. Furthermore, father did not preserve for appeal his argument that the court erred by "double-dipping" in its allocation of Drive Square. Accordingly, we affirm the trial court's decision on Assignments of Error 9, 10, 11, and 13, and decline to reach appellant's unpreserved argument on Assignment of Error 12. We also cannot say that the trial court erred in finding that father's entire 72% share of Drive Square was marital property – and in awarding mother 35% of father's 72% share of the company. Because there are two other shareholders of record, the court was certainly not plainly wrong in limiting its equitable distribution of the company to father's 72% share, and we affirm the trial court on mother's Cross-Assignment of Error 2.

Next, the trial court did not err in determining that the Citibank credit card debt was actually father's separate debt because this finding was supported by credible evidence. Therefore, the court did not abuse its discretion by changing its classification of this debt to be father's separate debt while the matter was still within the breast of the trial court, and, consequently, we affirm the trial court's decision on Assignment of Error 15.

The trial court also committed no error in awarding mother some of her attorney's fees incurred in the trial court. We cannot say that the court abused its discretion by awarding mother

$20,000 in attorney's fees even though mother may in fact have incurred substantially more legal fees. For these reasons, we affirm the trial court on father's Assignment of Error 17 and mother's Cross-Assignment of Error 1. Furthermore, considering all the equities of the case, we decline to award appellate attorney's fees to father.

On Assignments of Error 4 and 6, we reverse the decision of the circuit court and remand for further proceedings consistent with this opinion and for the circuit court to provide an explanation for its decision on spousal support, as required by Code § 20-107.1(E) and Code § 20-107.1(F). Further, because father advanced no argument in support of Assignment of Error 5, he has waived that assignment of error, and we do not reach it.

Moreover, with respect to Assignments of Error 7 and 8, we reverse and remand for the circuit court to make the statutorily required findings on child support. The court on remand must meet the statutory requirements of Code § 20-108.1 and Code § 20-108.2 by calculating the presumptive amount of child support under the child support guidelines and in making written findings justifying any deviation from the guidelines. In addition, father's Assignment of Error 16 and the circuit court's decision to order an additional $100 per month payment of father's child support that was in arrears is encompassed by our overall reversal and remand on the child support. On remand, the circuit court may exercise its discretion to determine what portion, if any, of the child support award should go toward satisfying any child support arrearage that father may have accrued since the entry of the *pendente lite* award or also during the pendency of this appeal.

Affirmed in part, and reversed and remanded in part.